UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN S.,

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

Case No. 22-13056
Honorable Mark A. Goldsmith
Magistrate Judge Elizabeth A. Stafford

---

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT [ECF NOS. 12, 15]**

---

Plaintiff Shawn S. appeals the final decision of defendant
Commissioner of Social Security (Commissioner), which denied his
application for supplemental security income (SSI) under the Social
Security Act.  Both parties have filed summary judgment motions, referred
to this Court for a report and recommendation under 28 U.S.C.
§ 636(b)(1)(B).  After review of the record, the Court **RECOMMENDS** that:

- Plaintiff's motion, ECF No. 12, be **DENIED**;

- the Commissioner's motion, ECF No. 15, be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** under sentence
  four of 42 U.S.C. § 405(g).

### I.      Background

### A. Plaintiff's Background and Disability Applications

Born in March 1970, plaintiff was 50 years old when he applied for

SSI in August 2020.  ECF No. 7-3, PageID.39, 47.  He had no past relevant

work.  *Id.*, PageID.46.  Plaintiff claimed disability from paranoid

schizophrenia and chronic back pain.  *Id.*, PageID.50; ECF No. 7-4,

PageID.166, 177.  Months before the current application, in November

2019, an ALJ denied plaintiff's application for SSI benefits despite finding

that plaintiff had the severe impairments of schizoaffective disorder,

obesity, and degenerative disc disease of the lumbar spine.  ECF No. 7-4,

PageID.142-153.

After the current application, another ALJ found plaintiff not disabled

after a hearing during which plaintiff and a vocational expert (VE) testified.

ECF No. 7-3, PageID.39-73.  The Appeals Council denied review, making

the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.36-

38.  Plaintiff timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC) and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

_____

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled. At the first step, she found that plaintiff had not engaged in substantial gainful activity after the amended alleged onset date of August 19, 2020. ECF No. 7-3, PageID.42. At the second step, the ALJ found that plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with facet disease with mild nerve root compression at L5-S1, obesity, and schizoaffective disorder. *Id.*, PageID.41-42. Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.42-43.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform light work,[2] except he would

> require a sit stand option permitting change in position every 30 minutes if needed and without disturbing the workplace and would not be off task more than 10% of the workday due to sit stand option; the claimant would require an assisted device such as a cane to ambulate during the work day; he could

---

[2] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds….[A] job is in this category when it requires a good deal of walking or standing…[and] when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." 20 C.F.R. § 416.967(b); Social Security Ruling (SSR) 83-10, 1983 WL 31251 (1983).

never climb ladders, ropes, or scaffolds; occasionally climb
ramps or stairs, balance, stoop, kneel, crouch, or crawl; should
avoid concentrated exposure to hazardous, moving machinery
and all exposure to unprotected heights; is limited to simple,
routine, and repetitive tasks, performed in a work environment
free of fast pace production requirements, involving only simple,
work-related decisions, and with few, if any workplace changes;
only occasional interaction with the public, coworkers, and
supervisors.

*Id.*, PageID.43.  At step four, the ALJ found that plaintiff had no past

relevant work.  *Id.*, PageID.46.  At the final step, after considering plaintiff's

age, education, work experience, RFC, and the testimony of the VE, the

ALJ found that plaintiff could perform jobs that are available in the national

economy, including as an office clerk and office helper.  *Id.*, PageID.47.

## II.   Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was

made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc.*

*Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

Under the substantial-evidence standard, a court looks to an
existing administrative record and asks whether it contains
sufficient evidence to support the agency's factual
determinations.  And whatever the meaning of substantial in
other contexts, the threshold for such evidentiary sufficiency is
not high.  Substantial evidence, this Court has said, is more
than a mere scintilla.  It means—and means only—such

5

relevant evidence as a reasonable mind might accept as
adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up). The

substantial-evidence standard does not permit the Court to independently

weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d

917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and

substitute its own judgment for that of the Commissioner merely because

substantial evidence exists in the record to support a different conclusion.");

*Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)

("If the Secretary's decision is supported by substantial evidence, it must be

affirmed even if the reviewing court would decide the matter differently, and

even if substantial evidence also supports the opposite conclusion.")

(cleaned up).

Plaintiff argues that the ALJ's assessed RFC is not supported by

substantial evidence because she failed to address all of his impairment-

related symptoms and did not consider whether he could perform mental

and physical work activities on a sustained basis. ECF No. 12,

PageID.1164. The Court disagrees and recommends that the ALJ's

decision be affirmed.

**B.**

Plaintiff argues that the ALJ disregarded evidence in the record that supported his disability, pointing to statements from treating physician Mahmoud Al-Saadi, M.D., about the need for unscheduled breaks and ignoring plaintiff's subjective symptoms.  ECF No. 12, PageID.1166.  Dr. Al-Saadi opined in a February 2020 medical assessment that plaintiff needed unscheduled ten-minute breaks "every 15 minutes" in a regular eight-hour day.  ECF No. 7-8, PageID.970.  The doctor said that an MRI of plaintiff's lumbar spine showed spondyloarthropathy with mass effects and compression on the nerve root.  *Id.*  Dr. Al-Saadi described plaintiff's symptoms of lower back pain, pain in the back of his neck, and lower back pain shooting to his legs; plaintiff's pain was not relieved from the prescribed 300 mg of gabapentin that did not relieve his pain.  *Id.,* PageID.971.

ALJs must assess the persuasiveness of all opinions from both treating and non-treating sources by considering several factors, the most important being the opinion's supportability and consistency with the record evidence.  20 C.F.R. § 416.920c(a). Under the supportability factor, the more relevant "objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion," the

7

more persuasive the medical opinion will be.  § 416.920c(c)(1).  An opinion

that is more consistent with the evidence from other medical sources and

nonmedical sources is also more persuasive.  § 416.920c(c)(2).

The ALJ discussed Dr. Al-Saadi's medical opinion, noting the doctor's

findings about the unscheduled breaks as well as postural limitations.  ECF

No. 7-3, PageID.45.  Dr. Al-Saadi's findings about never climbing ladders,

ropes, or scaffolds were persuasive because they were supported by

diagnostic evidence showing degenerative disc disease of the lumbar

spine.  *Id.*; *see* 20 C.F.R. § 416.920c(c)(1).  But the ALJ found the

restrictions about unscheduled breaks unpersuasive because they "were

inconsistent with the medical evidence, including the claimant's

presentation with negative joint/muscle pain, intact sensation, and negative

numbness or tingling during treatment."  ECF No. 7-3, PageID.45 (citing

ECF No. 7-9, PageID.1027, 1029, 1046, 1072, 1099, 1142; ECF No. 7-8,

PageID.333-339).

Plaintiff complains that the ALJ's findings are inconsistent because

she found Dr. Al-Saadi's opinions persuasive in some respects and

unpersuasive in others.  ECF No. 12, PageID.1167-1168.  But the ALJ's

finding that only part of the medical opinion was supported by the evidence

is both common and allowed under the regulations.  S*ee, e.g.*, *Ervin v.*

8

*Comm'r of Soc. Sec.*, No. 22-10892, 2023 WL 5803698, at \*3-\*4 (E.D. Mich. Sept. 7, 2023); *Espino v. Comm'r of Soc. Sec.*, No. 5:22-CV-01544-DAC, 2023 WL 4107923, at \*9-\*10. (N.D. Ohio June 21, 2023).

Plaintiff also argues that the ALJ's evaluation of Dr. Al-Saadi's opinion depended only on objective medical evidence.  ECF No. 12, PageID.1168-1169.  Plaintiff suggests that the ALJ's reliance of objective evidence violated Security Ruling (SSR) 16-3p, but that ruling does not address the persuasiveness of medical opinions.  2016 WL 1119029 (Mar. 16, 2016).  Rather, SSR 16-3p describes how ALJs evaluate symptoms in disability claims.  And the ALJ properly relied on objective evidence to address the persuasiveness of Dr. Al-Saadi's opinion.  § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

The Court infers that plaintiff means to complain that the ALJ did not give enough weight to his subjective symptoms when assessing his RFC. The regulations set forth a two-step process for evaluating a plaintiff's subjective symptoms.  First, the ALJ evaluates whether objective medical

9

evidence of an underlying condition exists and whether that condition could reasonably be expected to produce the alleged symptoms.  20 C.F.R. § 416.929(a); SSR 16-3p.  If so, the ALJ assesses any work-related limitations by determining the intensity, persistence, and limiting effects of these symptoms.  20 C.F.R. § 416.929(a); SSR 16-3p.  In sum, ALJs assess whether the symptoms claimed are "consistent with the objective medical and other evidence in the individual's record."  SSR 16-3p.

To evaluate the limiting effects of subjective symptoms, ALJs consider all available evidence, including the plaintiff's history, laboratory findings, statements by the plaintiff, and medical opinions.  20 C.F.R. § 416.929(a).  Although a plaintiff's description of his symptoms will "not alone establish that [he] is disabled," *id.*, the ALJ may not disregard the plaintiff's subjective complaints because they lack substantiating objective evidence, SSR 16-3p.  Without objective evidence, ALJs are to consider a plaintiff's daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; the type, dosage, and side effects of medication to alleviate symptoms; and any other treatment or measures used to relieve pain.  20 C.F.R. § 416.929(c)(3).

Here, the ALJ summarized plaintiff's reported symptoms and concluded that the alleged "intensity, persistence and limiting effects of

10

these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  ECF No. 7-4, PageID.148; *see* 20 C.F.R. § 416.929(a); SSR 16-3p.  The ALJ's analysis is supported by substantial evidence.

Thoroughly examining plaintiff's medical history, the ALJ acknowledged plaintiff's report of worsening lower back pain and his need for a cane and back brace, but she noted that plaintiff also reported that he could prepare meals and socialize with others.  ECF No. 7-3, PageID.44; ECF No. 7-7, PageID.272-279, 289-296.  She cited the MRI of the lumbar spine and x-ray from 2018 that showed mild degenerative disc disease, but she noted that plaintiff's back pain was treated conservatively and that he "presented with full motor strength, normal gait, normal musculoskeletal range of motion, negative joint/muscle pain, intact sensation, and negative numbness or tingling" during the examination.  ECF No. 7-3, PageID.44; ECF No. 7-9, PageID.1027, 1029, 1046, 1072, 1099, 1142; ECF No. 7-8, PageID.333-339.  And as recently as September 2021, "the claimant presented with negative numbness/tingling, normal gait, and full motor strength."  ECF No. 7-3, PageID.44; ECF No. 7-9, PageID.1027, 1029.

The ALJ also assessed plaintiff's reports of back pain.  Despite plaintiff's subjective symptoms and that he appeared uncomfortable getting

11

on and off the exam table during an April 2018 consultative examination, plaintiff "presented with normal gait, mild discomfort with lumbar range of motion, full motor strength, intact sensation, and negative bilateral straight leg raise testing." ECF No. 7-3, PageID.44; ECF No. 7-8, PageID.333-339. The consulting doctor did not issue restrictions from physical impairments. ECF No. 7-8, PageID.333-339.

In a November 2020 consultative examination, plaintiff reported that he used a cane for support but did not use it during the examination, and the doctor noted that plaintiff had a slow gait, could not do a tandem walk, and did a heel and toe walk slowly. ECF No. 7-8, PageID.759-762. The doctor recommended limited standing/walking and lifting with occasional stopping and bending/crouching, and the ALJ found these restrictions persuasive because plaintiff presented with a slow gait and the restrictions reflected the medical evidence of plaintiff's lumbar tenderness from Dr. Al-Saadi's examination. *Id.*, PageID.761, 970-972.

Next, the ALJ discussed the state agency medical consultants' January and May 2021 assessments that recommended light work with postural limitations and an avoidance of hazards. ECF No. 7-3, PageID.45; ECF No. 7-4, PageID.166-175, 177-185. The ALJ found these assessments persuasive because they were supported by plaintiff's lumbar

12

discomfort with range of motion and the November 2020 consultative examination.  ECF No. 7-3, PageID.45; *see* ECF No. 7-8, PageID.759-762.

Notably, the ALJ found that plaintiff was more limited than the state agency doctors opined.  *See McCoy v. Kijakazi*, No. 21-11739, 2023 WL 3407159, at *7 (E.D. Mich. Feb. 27, 2023), *adopted*, 2023 WL 3147899 (E.D. Mich. Apr. 28, 2023) ("An ALJ's more restrictive finding than that of the state agency physician's may lend support for the ALJ's finding.") (cleaned up).  Citing plaintiff's claims about ongoing back pain, the ALJ found that plaintiff is "further limited to requiring a sit stand option permitting change in position every 30 minutes if needed and without disturbing the workplace and would not be off task more than 10% of the workday due to sit stand option and would require an assisted device such as a cane to ambulate during the work day."  ECF No. 7-3, PageID.45.

Plaintiff insists that the ALJ's analysis hinges only on objective medical evidence and that she "cited select instances" to support her own findings.  ECF No. 12, PageID.1168-1169.  Along with Dr. Al-Saadi's finding that plaintiff needed unscheduled breaks, plaintiff cites hospital records from September 2021 showing that he claimed cervical spine pain and chronic back pain in the lower and mid back that was not relieved by gabapentin.  ECF No. 7-8, PageID.970; ECF No. 7-9, PageID.1027.  And

13

plaintiff says that the ALJ did not discuss a medical opinion in an August 2021 application for a disability parking placard that he was unable to walk more than 200 feet due to his degenerative disc disease and use of a walking cane. *Id.*, PageID.1052.

But an ALJ need not discuss every piece of evidence, like the disability parking placard application. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("It is well settled that an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (cleaned up). And when, as here, the ALJ's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286. So plaintiff's reliance on the evidence that the ALJ allegedly omitted is unavailing because he has not shown that the ALJ's rationale was flawed; instead, he asks the Court to impermissibly reweigh the evidence. *See DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014).

**C.**

Plaintiff also argues that the ALJ failed to discuss the side effects of medication on his ability to function, as required under SSR 16-3p.  ECF No. 12, PageID.1170.  He cites a September 2021 medical questionnaire in which Hanheung Lee, M.D., noted plaintiff's "[i]nability to manage his symptoms without medications that prevent optimal functionality, causing drowsiness, fatigue, lethargy, diarrhea, irritability, mood swings, and auditory/visual hallucinations that may create risk factors for himself or others."  ECF No. 7-8, PageID.1020.  The Court finds that the ALJ properly considered Dr. Lee's opinion and effects of plaintiff's medications.

The ALJ discussed Dr. Lee's opinion, which restricted plaintiff to being absent from work more than four days per month.[3]  ECF No. 7-3, PageID.46; ECF No. 7-8, PageID.979, 1020-1021.  The ALJ found Dr. Lee's assessment unpersuasive "because the restriction was inconsistent with the medical evidence, including the claimant's repeated reports of stable mental health with medication treatment," and because "the restriction was unsupported by the specific medical evidence relied upon." ECF No. 7-3, PageID.46.

---

[3] The Court notes that the ALJ did not have to defer to Dr. Lee's opinion about how often plaintiff would miss work.  *See Yousif v. Berryhill*, No. CV 16-13470, 2017 WL 5493139, at *3 (E.D. Mich. Oct. 12, 2017).

The ALJ detailed plaintiff's mental treatment at Detroit Central City Community Mental Health for complaints of auditory hallucinations, anger, paranoia, racing thoughts, poor impulse control, and insomnia.  *Id.*  But the ALJ noted that, while plaintiff presented with depressed mood with visual hallucinations at times, he also repeatedly showed appropriate affect, cooperative behavior, negative suicidal ideation, and negative hallucinations; he reported eating and sleeping well; and he routinely reported that he wanted to continue with the same medication.  ECF No. 7-8, PageID.473, 522, 983, 986, 989, 994, 1013.  During plaintiff's treatment for physical complaints, plaintiff presented with appropriate mood and affect, negative suicidal ideation, intact cognitive function, and cooperative behavior.  *Id.*, PageID.1029, 1046, 1048, 24, 26, 1142.  And as recently as September 2021, plaintiff reported that he was not depressed and had no suicidal ideation or mental health medication side effects.  *Id.*, PageID.982.

The ALJ adequately evaluated Dr. Lee's opinion and found that it conflicted with plaintiff's mental health records, which showed that plaintiff repeatedly denied any side effects from his current medications.  *See id.*, PageID.473, 982, 989, 992, 994, 995, 997, 1013.

Plaintiff also highlights Dr. Lee's statement that he "does [not] and will not ever possess the ability to function well in a work setting where he's

16

required to engage with others, due to his mental illness and the limitations (side effects) of his medications." ECF No. 7-8, PageID.1021. But statements that a claimant is or is not "disabled, blind, able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive" because the issues are "reserved to the Commissioner." 20 C.F.R. § 416.920b(c)(3)(i). ALJs need "not provide any analysis about how [they] considered such evidence in [their] determination or decision." § 416.920b(c); *see also White v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-762, 2022 WL 3282429, at *14 (N.D. Ohio June 1, 2022), *adopted*, 2022 WL 3097385 (N.D. Ohio Aug. 4, 2022) (finding that an ALJ need not analyze a doctor's statement that the claimant was "psychologically unable to return to work due to depression, reduced motivation, reduced concentration, insomnia; and reduced energy" because it regarded whether the claimant was "able to perform regular or continuing work").

Last, plaintiff points to his own testimony and argues that the ALJ did not consider his longitudinal mental health record or that he experienced symptoms despite taking psychiatric medication as prescribed. ECF No. 7-3, PageID.65; ECF No. 7-8, PageID.997. At the hearing, plaintiff testified that he experiences bad dreams, sees and hears things, is paranoid, and has anxiety attacks even though he is taking psychiatric medication as

prescribed.  ECF No. 7-3, PageID.65.  He also testified that he had mental health treatment beginning when he was 15 years old, has no past relevant work, is limited to a seventh-grade education, and was enrolled in special education.  *Id.*, PageID.65-66.

But the ALJ considered plaintiff's full testimony and even found that it supported limitations greater than those opined by state agency psychological consultants.  ECF No. 7-3, PageID.47.  In October 2020 and May 2021 examinations, the consultants found that plaintiff could perform simple tasks involving minimal contact with others and would have moderate limitations responding to work changes.  ECF No. 7-4, PageID.167-169, 173-174, 184.  Based on plaintiff's testimony and his history of mental treatment, the ALJ found that plaintiff is "further limited to work performed in a work environment free of fast pace production requirements."  ECF No. 7-3, PageID.47.

Plaintiff has not sustained his burden of showing that he needed a more restrictive RFC for his impairments and medication side effects.  *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  And even if evidence in the record could support a finding that plaintiff was more restricted, substantial evidence supports the ALJ's decision otherwise, so her decision should be affirmed.  *Cutlip*, 25 F.3d at 286.

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that plaintiff's motion, ECF No. 12, be **DENIED**; that the Commissioner's motion, ECF No. 15, be **GRANTED;** and that the ALJ's decision be **AFFIRMED.**

<br>

|  |  |
|---|---|
|  | s/Elizabeth A. Stafford |
|  | ELIZABETH A. STAFFORD |
| Dated: December 8, 2023 | United States Magistrate Judge |

## <u>NOTICE TO THE PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and

19

recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 8, 2023December 8, 2023.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager